UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| THOMAS ROSENBAUM, et al. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 1:06-CV-352-TS |
| | ) | |
| CHAD SEYBOLD, et al. | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

On October 26, 2006, the Plaintiffs filed a federal lawsuit against numerous Defendants

for violations of the Securities Act of 1933, the Securities Exchange Act of 1934, the Racketeer

Influenced and Corrupt Organizations Act (RICO), and numerous state laws, and for the

commission of various torts. The Complaint also sought quiet title to certain real estate. Before

this Court is a motion to dismiss the Fourth Amended Complaint filed by Defendant John

Hancock Life Insurance Company [DE 194]. The motion has been fully briefed.

## THE FOURTH AMENDED COMPLAINT

The Plaintiffs in this cause are individuals and entities who were promised a quick and

profitable return on their investments in residential real estate. The Fourth Amended Complaint

alleges that one or more of the Defendants organized holding companies for the purpose of

acquiring, rehabbing, and renting residential properties to the general public. The Plaintiffs label

this the "Investment Scheme." The Complaint outlines various misrepresentations made by

Defendant Chad Seybold ("Seybold") during the process of raising funds for the Investment

Scheme. It also sets forth other wrongdoings by Seybold, such as his purported misuse of monies

for his own personal benefit. During this time, Seybold was employed as a securities broker and

agent with Sigma Financial Corporation. Sigma was also named as a Defendant but has since

been dismissed by stipulation of the parties. One of the other individual Defendants who is

alleged to have conspired to engage in unlawful activity with Seybold is Scott Waterman

("Waterman"). Waterman is a securities broker and agent with John Hancock Insurance

Company, the Defendant whose motion to dismiss is pending before the Court. John Hancock's

motion is the subject of this Opinion and Order.


## STANDARD OF REVIEW

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the

sufficiency of the complaint and not the merits of the suit. *Gibson v. City of Chi.*, 910 F.2d 1510,

1520 (7th Cir. 1990). The court presumes all well-pleaded allegations to be true, views them in

the light most favorable to the plaintiff, and accepts as true all reasonable inferences to be drawn

from the allegations. *Whirlpool Fin. Corp. v. GN Holdings, Inc.*, 67 F.3d 605, 608 (7th Cir.

1995). To prevail on a motion to dismiss, the defendant must demonstrate that "the plaintiff's

claim, as set forth by the complaint, is without legal consequence." *Gomez v. Ill. State Bd. of

Educ.*, 811 F.2d 1030, 1039 (7th Cir. 1987). Under the Federal Rules of Civil Procedure the

plaintiff need only "set out in [his] complaint a short and plain statement of the claim that will

provide the defendant with fair notice of the claim" *Scott v. City of Chi.,* 195 F.3d 950, 951 (7th

Cir. 1999), and the "grounds upon which it rests," *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955,

1964 (2007). Fed. R. Civ. P. 8(a). The complaint must provide more than labels and conclusions,

a formulaic recitation of the elements of a cause of action, or facts that do not raise a right to

relief above the speculative level. *Bell Atl. Corp.*, 127 S. Ct. at 1964–65. A court applying the

holding in *Bell Atlantic* to different types of cases must "determine what allegations are

necessary to show that recovery is 'plausible.'" *Tamayo v. Blagojevich*, — F.3d —, No. 07-

2975, 2008 WL (7th Cir. May 27, 2008.) More complex litigation, for example that involving

antitrust or RICO claims, may require a fuller set of factual allegations to show that relief is

plausible. *Id.* However, a plaintiff may also plead itself out of court by pleading facts that

establish an impenetrable defense to its claims. *See Massey v. Merrill Lynch & Co.*, 464 F.3d

642, 650 (7th Cir. 2006).

Rule 9(b) requires that when "alleging fraud . . . a party must state with particularity the

circumstances constituting fraud." Fed. R. Civ. P. 9(b). However, "[m]alice, intent, knowledge,

and other conditions of a person's mind may be alleged generally." *Id.* A complaint alleging

fraud must provide "the who, what, when, where, and how." *DiLeo v. Ernst & Young*, 901 F.2d

624, 627 (7th Cir. 1990)). The Seventh Circuit has held that Rule 9(b) heightened pleading

applies to all claims with factual allegations involving fraud, even if the claims are not, by

definition, fraudulent torts. *Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 507 (7th

Cir. 2007) (holding that a claim sounds in fraud if it is premised upon a course of fraudulent

conduct).

Under the Private Securities Litigation Reform Act (PSLRA), complaints alleging

securities fraud actions must meet certain statutory requirements:

(b) Requirements for securities fraud actions

(1) Misleading statements and omissions
In any private action arising under this chapter in which the plaintiff alleges that
the defendant—

(A) made an untrue statement of a material fact; or

(B) omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances in which they were made, not misleading;

the complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed.

15 U.S.C. § 78u-4(b)(1)(A)–(B). Further, with respect to violations that require proof that the defendant acted with a particular state of mind, the PLSRA requires that the complaint "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Id.* § 78u-4(b)(2).

## DISCUSSION

John Hancock is named in Count IV of the Fourth Amended Complaint, which the Plaintiffs designate "Violation of Securities Laws." (DE 168, Fourth Am. Compl, Count IV.) The Plaintiffs state that, "John Hancock, who failed to properly supervise or review [Waterman's] outside business activities, is liable to Plaintiffs with respect to damages suffered as a result of Waterman'[s] actions and/or failure to act relating to the Securities as described herein and throughout this Complaint." (Fourth Am. Compl. ¶ 131.) The Plaintiffs allege that Waterman solicited investors for the sale of ownership interest in certain companies. They contend that he "failed to perform any of the due diligence required of a registered broker." (Fourth Am. Compl. ¶ 104.) They also complain that the securities were not registered with the Indiana Securities Division or the Securities Exchange Commission, that the investment guides were not adequate or accurate, and that required disclosure documents were not provided. They

submit that these were *per se* violations of state and federal securities laws. The Plaintiffs allege

that in fall and winter 2005, Seybold "and/or Waterman misrepresented their borrowing power

and net worth in an effort to induce" the Plaintiffs to invest (Fourth Am. Compl. ¶ 125), and that

by Seybold's "and/or Waterman's fraudulent acts, the sale of the Securities was effected by

using or employing, in connection with the purchase or sale of an unregistered security,

manipulative or deceptive devices or contrivances in contravention of SEC rules and regulations

in violation of 15 USC § 78j(b)" (Fourth Am. Compl. ¶ 126). The Plaintiff allege that Seybold's

misrepresentations and deceptive acts evidence an intent to deceive the public. (*Id.* ¶ 127.) They

allege that Waterman failed to protect the Plaintiff investors, despite his "knowledge of potential

investors or actual knowledge of investors." (*Id.* ¶ 128.) As a result of the violations of federal

and state "securities and anti-fraud laws" outlined in Count IV, the Plaintiffs seek judgment

against Seybold, Waterman, Sigma, and John Hancock.

John Hancock argues that the claims against Waterman are not pleaded with the

particularity required of fraud claims. John Hancock also argues that the Plaintiffs have not

alleged facts that, if true, would establish that John Hancock exercised control over Waterman's

activity upon which the liability against John Hancock is predicated. John Hancock contends that

it cannot be held liable for actions Waterman may have taken outside the scope of his

employment.

The Plaintiffs maintain that they have not alleged that Waterman committed fraud, and

that this is proper because "liability for securities related acts are not solely within the province

of fraud claims." (Pl. Surreply, DE 251 at 2.)  They assert that Waterman committed *per se*

violations of securities regulations and breached fiduciary duties. The Plaintiffs claim that for

John Hancock's part, it failed to supervise Waterman's outside business activities and that this

states a sufficient claim against the brokerage firm. The Plaintiffs assert that John Hancock is

liable for Waterman's failure to act on the Plaintiff's behalf by virtue of Indiana Code § 23-2-1-

19(a), a provision of the Indiana Code that imposes civil liability for violations of state securities

laws upon a person "who does not sustain the burden of proof that the person did not know and

in the exercise of reasonable care could not have known of the violation." Ind. Code § 23-2-1-

19(a). The Plaintiffs also point to Rules 3030 and 3040 of the National Association of Securities

Dealers ("NASD") as proof that the a brokerage firm is responsible for an agent's compliance

with the procedures for engaging in outside business activities.

Whether the Plaintiffs have stated a claim upon which relief may be granted against John

Hancock must be examined in conjunction with the Plaintiffs' allegations against Waterman.

This task is complicated by the intermingling of allegations against Waterman and Seybold,

particularly as they relate to fraud. In response to the motion to dismiss, the Plaintiffs claim that

they have not made allegations of fraud against Waterman, but then admit that such allegations

appear in the complaint. (DE 222 at 8 n.9) (stating that the amended complaint "does recognize

the possibility that Scott Waterman may have engaged in fraudulent conduct with Chad Seybold,

but at this time said claim is merely stated in the alternative"). This pleading in the alternative

does not meet the heightened pleading requirements of Rule 9(b) or the PSLRA or relieve the

Plaintiffs of the specificity requirements. Because fraud was not properly plead against

Waterman, there can be no derivative liability against John Hancock for any fraudulent conduct,

Any claims against John Hancock that are premised on fraudulent conduct of Waterman are

dismissed.

But fraud claims were not the only ones asserted against Waterman, and derivatively, against John Hancock. The Plaintiffs contend that Waterman breached his fiduciary duty to the Plaintiffs. Presumably, the Plaintiffs are relying on paragraph 128 of the complaint, which provides that "[d]espite Waterman's knowledge of potential investors or actual knowledge of investors, Waterman failed to act to protect" the Plaintiffs. (Fourth Am. Compl., ¶ 128.) In light of the other allegations in the complaint, it appears that the Plaintiffs are arguing that Waterman should have made known to the Plaintiffs the purported deficiencies in the sale of the securities, including Seybold's misrepresentations and deceptive acts. John Hancock argues that the Plaintiffs fail to cite any authority for the proposition that Waterman had a legal duty to protect the Plaintiffs, and argues that there is no such authority or duty. (DE 231 at 5–6.)

The Court notes that a broker is a fiduciary to his client. *United States v. Dial*, 757 F.2d 163, 168 (7th Cir. 1984); *see also* 12 Am. Jur. 2d *Brokers* § 149 (May 2008) ("In general, the relationship between a stockbroker and a customer is a fiduciary one, especially in cases where the customer deposits money with the broker for the purchase of securities or delivers securities to the broker for sale or exchange.") (footnotes omitted).

The complaint alleges that Waterman offered for sale to the public and to the Plaintiffs ownership interest in the investment entities and that he engaged in solicitation of investors. (Fourth Am. Compl. ¶¶ 99, 101.) There is no mention in the complaint of a special or fiduciary relationship that arose from the offer and solicitation.[1] The Plaintiffs do not allege that they hired Waterman to invest their money or that they became his clients. They do not assert that they relied on Waterman for advice. *See Shearson Hayden Stone, Inc. v. Leach*, 583 F.2d 367, 271–72

---

[1] By comparison, the Plaintiffs do allege that Seybold had a fiduciary and contractual obligation and duty to the Plaintiffs. (Fourth Am. Compl. ¶ 53.)

7

(7th Cir. 1978) (finding that broker did not stand in fiduciary relationship with a sophisticated

customer who made all investments decisions and did not rely on his broker for advice);

*Dolatowski v. Merrill Lynch, Pierce, Fenner & Smith*, 808 N.E.2d 676, 681–82 (Ind. Ct. App.

2004) (stating that Indiana Courts have never held that there is a special fiduciary trust between a

broker and an investor, particularly where there is no evidence that the investor relied on the

broker's advice.) The complaint does not allege facts to support the existence of a fiduciary

relationship. Therefore, Waterman's failure to "protect" the Plaintiffs by advising them of the

purported securities violations does not raise a right to relief above the speculative level.

Dismissal of the breach of fiduciary duty claims is appropriate.

Only the non-fraud violations of Indiana and federal securities laws remain as potential

claims for which John Hancock can be held derivatively liable. Indiana Code imposes civil

liability on

> [a] person who offers or sells a security in violation of this chapter, and who does
> not sustain the burden of proof that the person did not know and in the exercise of
> reasonable care could not have known of the violation, is liable to any other party
> to the transaction who did not knowingly participate in the violation or who did
> not have, at the time of the transaction, knowledge of the violation.

Ind. Code § 23-2-1-19(a). John Hancock cannot be directly liable under this section because

there is no allegation that it sold the securities at issue. Rather, the Plaintiffs allege that

Waterman and Seybold sold the securities, and, in their briefs, the Plaintiffs refer to this as

outside business activity. Thus, John Hancock was not a "person who offers or sells a security."

Ind. Code § 23-2-1-19(a). But the Indiana Securities Act also contains a provision for derivative

liability, which states:

> A person who directly or indirectly controls a person liable under subsection (a),
> (b), or (c), a partner, officer, or director of the person, a person occupying a

8

> similar status or performing similar functions, an employee of a person who
> materially aids in the conduct creating the liability, and a broker-dealer or agent
> who materially aids in the conduct are also liable jointly and severally with and to
> the same extent as the person, unless the person who is liable sustains the burden
> of proof that the person did not know, and in the exercise of reasonable care could
> not have known, of the existence of the facts by reason of which the liability is
> alleged to exist.

Ind. Code § 23-2-1-19(d). For derivative liability to attach, there must be a predicate sale by Waterman that was "in violation of this chapter." *Id.* § 23-2-1-19(a). The Plaintiffs' complaint alleges at least one qualifying violation. The chapter referenced in subsection 19(a), is Indiana Code § 23-2-1, which contains securities regulation legislation. Under this section is it unlawful to sell a security that is not registered. *Id.* § 23-2-1-3. The Plaintiffs allege that Waterman sold securities without having them registered even though registration was required.

As to John Hancock's derivative liability for the sale of an unregistered security, the only allegations that suggests John Hancock can be liable under some controlling theory is that Waterman is employed as a securities broker and agent with John Hancock. While this, if true, would not necessarily impose liability on John Hancock for Waterman's acts in connection with the investments, the reasonable inference of this allegation—an inference that is not foreclosed by other allegations in the complaint—is that John Hancock controlled Waterman, either directly or indirectly. This is consistent with the Plaintiffs' allegation that John Hancock failed to supervise or review Waterman's outside business activities. An entity can only fail to supervise one who it has the authority to supervise. John Hancock's motion to dismiss does not establish that the Plaintiffs' complaint allegations are insufficient to move forward with a derivative liability claim against John Hancock under Indiana securities laws.

9

The sale of unregistered securities is also prohibited by federal law. A person who "offers or sells a security in violation of section 77e" is liable to "the person purchasing such security from him, who may sue either at law or in equity in any court of competent jurisdiction." 15 U.S.C. § 77*l*(a)(1). As it relates to the allegations against Waterman, § 77e makes it unlawful to sell a security for which a registration statement has not been filed. *See* 15 U.S.C. § 77e. Again, John Hancock did not offer or sell the security at issue. However, federal securities law imposes liability not only on the person who actually commits a securities law violation, but also on an entity that controls the violator.

> Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

15 U.S.C. § 78t.

The same allegation of Waterman's employment applies to the federal securities claims. John Hancock has not developed any argument in relation to this provision. To prevail on a motion to dismiss, the defendant must demonstrate that "the plaintiff's claim, as set forth by the complaint, is without legal consequence." *Gomez v. Ill. State Bd. of Educ.*, 811 F.2d 1030, 1039 (7th Cir. 1987).

Whether Waterman committed any primary violation of securities law, and whether John Hancock can be liable as a party that controlled Waterman, remains to be seen. But the Plaintiffs have alleged facts that state grounds for relief and put the Defendant on notice of their claims.

## CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART the

motion to dismiss the Fourth Amended Complaint filed by Defendant John Hancock Life

Insurance Company [DE 194]. The Plaintiffs may proceed with their claims for derivative

liability for violations of federal and state securities laws that do not involve fraud.

SO ORDERED on June 20, 2008.

 s/ Theresa L. Springmann
 THERESA L. SPRINGMANN
 UNITED STATES DISTRICT COURT