## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
## FORT WAYNE DIVISION

THOMAS ROSENBAUM, et al.,           )
                                     )
                Plaintiffs,          )
                                     )
        v.                           )        CAUSE NO.: 1:06-CV-352-TLS
                                     )
CHAD SEYBOLD, et al.,                )
                                     )
                Defendants.          )

## OPINION AND ORDER

The Plaintiffs in this lawsuit are investors who contributed capital to certain real estate

companies for the purpose of buying, rehabilitating, remortgaging, renting, and eventually

selling homes in Marion, Indiana. After the Plaintiffs learned that their investment was

unsuccessful and their money gone, having potentially been mismanaged and misappropriated,

they sued the business ventures, entities, and individuals they believed were legally responsible

for their losses. The Plaintiffs initiated their lawsuit on October 26, 2006. On August 1, 2007, the

Plaintiffs filed their Fourth Amended Complaint [ECF No. 168] in response to a successful

motion for a more definite statement. The Fourth Amended Complaint (the Complaint) is the

controlling pleading in this case. The Complaint alleges violations of federal and state law,

creating a basis for subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question)

and 28 U.S.C. § 1367 (supplemental jurisdiction). As the case proceeded, many of the

Defendants were dismissed by stipulation. In the course of managing this case, the Magistrate

Judge directed that the Plaintiffs identify the remaining claims and parties that supported this

Court's jurisdiction. On August 22, 2008, the Plaintiffs filed a Statement Regarding Subject

Matter Jurisdiction [ECF No. 317]. In their Statement, the Plaintiffs identified Counts IV (federal

securities), Count V (RICO), and Count XIV (conspiracy) as supporting federal subject matter jurisdiction. The Court will discuss the status of each of these claims.

Count IV, Federal Securities: In the Plaintiffs' Statement Regarding Subject Matter Jurisdiction, they stated that "Count IV of the Complaint states a claim for violation of Federal securities laws against Chad Seybold, Scott Waterman, Sigma Financial Group and John Hancock Life Insurance Company, U.S.A. None of these parties (subject to the dismissal of John Hancock) remain as a party to this Action." (Pls.' Statement ¶ 1, ECF No. 317.) On December 24, 2008, John Hancock was dismissed upon stipulation of the parties pursuant to Federal Rule of Civil Procedure 41(a)(2) [Order, ECF No. 323], and as of December 24, 2008, Count IV was resolved as to all parties against whom the claim was brought.

Eighteen months later, on June 26, 2010, Defendants Beau Jack White, James Thomas Beaman, and Johnson, Beaman, Bratch & White, LLP (the Law Firm Defendants), the only Defendants still remaining in the case, filed a Motion for Summary Judgment [ECF No. 410]. In their Memorandum of Law in Support of Motion for Summary Judgment, these Defendants addressed the "Alleged Violations of Federal Securities Law" as follows: "There are no allegations that White, Beaman or the Firm directly violated § 10(b), thus, presumably, Plaintiffs are seeking derivative liability for violation of federal securities laws." (ECF No. 411 at 22.) The Defendants then argued that no such aiding and abetting liability was permissible under federal security laws and, to hold them liable, the Plaintiffs had to meet the requirements of primary liability and could not make this showing. In their Response and Countermotion for Summary Judgment, the Plaintiffs treat Count IV as still pending before this Court. Neither party has addressed the Plaintiffs' Statement Regarding Subject Matter Jurisdiction, whether the Plaintiffs

intended to set forth a securities claim against the Law Firm Defendants, or whether the Complaint actually sets forth such a claim against the Law Firm Defendants.

Count V, RICO: In the Plaintiffs' Statement Regarding Subject Matter Jurisdiction, they identified Count V as stating a Federal RICO claim against various entities and individuals who were defined elsewhere in the Complaint. The Law Firm Defendants are not included in the definition of individuals and entities against whom Count V is directed. Despite this, the Law Firm Defendants addressed the RICO claim in their Motion for Summary Judgment. However, in their Response and Countermotion, the Plaintiffs stated that they were waiving State and Federal RICO claims. (ECF No. 433 at 49 n. 8; ECF No. 443 at 3.) Thus, regardless of whether the Complaint stated a federal RICO claim against the Law Firm Defendants, it is no longer pending.

Count XIV, Conspiracy:  In the Plaintiffs' Statement Regarding Subject Matter Jurisdiction, they stated that Count XIV incorporated the Federal RICO claim, as well as other fraud counts against the Law Firm Defendants. As indicated above, the Plaintiffs are no longer pursuing the RICO claims. In addition, the Court's review of the Complaint shows that the Law Firm Defendants were only named in Counts XIV (conspiracy) and XIX (attorney malpractice). The state fraud claims make no mention of the Law Firm Defendants, but only refer to Chad Seybold and the Co-Conspirators. The definition of Co-Conspirators provided earlier in the Complaint does not include the Law Firm Defendants (who are referred to in the Complaint as Seytron Counsel).

Two issues arise with respect to the status of the federal claims. First, the parties assume in their summary judgment briefing that the Complaint states a federal securities claim against the Law Firm Defendants. However, neither the Complaint nor the Plaintiffs' Statement

Regarding Subject Matter Jurisdiction identify the Law Firm Defendants as being the subject of Count IV. Second, if all the federal claims have been dismissed, the Court must decide whether to exercise supplemental jurisdiction over the remaining state claims, and identify which state claims are properly before it.[1] The federal statute that allows supplemental jurisdiction of state law claims provides that the district court may decline to exercise supplemental jurisdiction if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3); *see also Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999) (noting that established law of this circuit is that the "usual practice" is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed before trial); *Wright v. Assoc'd Ins. Cos.*, 29 F.3d 1244, 1252 (7th Cir. 1994). "[W]hile a district court may relinquish its supplemental jurisdiction if one of the conditions of § 1367(c) is satisfied, it is not required to do so." *Hansen v. Bd. of Trustees of Hamilton Se. Sch. Corp.*, 551 F.3d 599, 607 (7th Cir. 2008). "Supplemental jurisdiction is a doctrine of discretion, and its 'justification lies in considerations of judicial economy, convenience and fairness to litigants.'" *Id.* (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966)). Relevant considerations include the nature of the state claims at issue, their ease of resolution, and the actual, avoidable, expenditure of judicial resources. *Id.* at 608.

Here, the district court and the parties have already expended substantial judicial resources. This litigation began in 2006 and the parties have completed discovery and filed

---

[1] In addition to federal securities violations, RICO, malpractice/negligence, and conspiracy, the parties address state fraud claims and state securities claims in their summary judgment briefing. The state securities claim is grouped with the federal securities claim in Count IV, which the Court already noted did not state a claim against the Law Firm Defendants. Also, as stated above, the fraud claims do not appear to be directed at the Law Firm Defendants.

motions for summary judgment. On the other hand, it is not necessarily true that these efforts would be wasted were the case refiled in state court. Moreover, this Court will not have decided any intertwined federal issues that would aid in the resolution of the distinct state claims if no such federal claims are properly before it. Other factors may also be relevant to this Court's determination and the Court will withhold deciding whether to relinquish its supplemental jurisdiction until it has had an opportunity to hear the argument of parties' counsel.

## CONCLUSION

Given the issues identified in this Opinion and Order, the Court SETS this matter for a telephonic conference/hearing on Thursday, August 4, 2011, at 1:30 PM to give the parties an opportunity to clarify the state of the record as to specific claims remaining against the Law Firm Defendants, including, if any, federal claims. Additionally, the Court will hear argument whether, regardless if any federal claims remain, the Court should retain supplemental jurisdiction over the state claims and reach the merits of the pending motions for summary judgment. The Court will initiate the call.

SO ORDERED on July 13, 2011.

 s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT