# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
## FORT WAYNE DIVISION

THOMAS ROSENBAUM, *et al.*,          )
                                          )
      Plaintiffs,          )
                                            )
      v.          )          CAUSE NO.: 1:06-CV-352-TLS
                                            )
CHAD SEYBOLD, *et al.*,          )
                                            )
      Defendants.          )

## OPINION AND ORDER

This matter is before the Court on the Plaintiffs' Request for Entry of Default Judgment as to the Pending Default Entries [ECF No. 501], filed on March 19, 2013. In the opening paragraph of this submission, the Plaintiffs assert that they "move to correct error and for reconsideration of this Court's Opinion and Order issued February 20, 2013, (ECF 489)." This introduction is not consistent with the title of the submission or with the six numbered paragraphs that follow the introduction. The Plaintiffs then repeat the request in closing, where they ask that the Court's Opinion and Order of February 20, 2013, be "vacated in part and modified in part such that the entry Prior Judgment be rendered a final judgment without it being *nunc pro tunc*." (Request 2, ECF No. 501.) This request for relief, which is the same request that the Plaintiffs have pending through a separate motion filed on March 4, which they titled "Plaintiffs' Motion to Correct Error, and Reconsider Regarding the Order of February 20, 2013 (ECF 489) and, Accordingly, the Finality of that Certain Final Judgment Issued August 30, 2011 (ECF 465 and 466)" [ECF No. 493], does not align with the title of docket entry 501 or its text. Because the Local Rules for the Northern District of Indiana require that motions "be filed separately," N.D. Ind. L.R. 7-1, because the Plaintiffs do not support the request to correct error

and for reconsideration in the text of docket entry 501, and because the Plaintiffs already have this same request pending in a different submission, the Court limits this Opinion and Order to a consideration of the requests for the entry of default and default judgment.

## ANALYSIS

### A.       See What, LLC

In paragraph 3 of the Plaintiffs' Request, they address the status of Defendant See What, LLC. They assert that See What, LLC, was served on March 25, 2008, and request an entry of default by the Clerk for Defendant See What, LLC's failure to defend. The Plaintiffs cite docket entry 287 as proof of service. Docket entry 287 is a Verification of Service that was filed on March 25, 2008, in which Attorney Jeffrey A. Schreiber affirms that he accepted service of the Fourth Amended Complaint on August 3, 2008 (presumably, a typographical error), on behalf of See What, LLC, and other entities. Attorney Schreiber did not represent See What, LLC, at the time and never entered an appearance on behalf of See What, LLC. In an Opinion and Order issued on February 20, 2013, the Court noted that See What, LLC, had never been served with the Complaint. The Court then gave the Plaintiffs notice pursuant to Rule 4(m) that it would dismiss this action without prejudice against See What, LLC, unless the Plaintiffs showed good cause for the failure to timely complete process. The Plaintiffs have not made this showing.

Proof of service "must be by the server's affidavit." Fed. R. Civ. P. 4(*l*). The only "proof" of service the Plaintiffs offer is the Verification of Attorney Schreiber. However, Attorney Schreiber was not the process server. The Plaintiffs, despite opportunity to do so, have not shown that they timely completed process. As this action has been pending against See What,

LLC, for more than one hundred twenty days (indeed, for more than six years) with a failure to complete process, the Plaintiffs' request for entry of default is denied and the action against See What, LLC, is dismissed without prejudice pursuant to Rule 4(m) of the Federal Rules of Civil Procedure.

**B.      Seytron Properties, LLC**

Paragraph 4 of the Plaintiffs' Request is directed to Defendant Seytron Properties, LLC. The Plaintiffs, citing docket entry 11, advise that Seytron Properties, LLC, was served on October 26, 2006. The Court, in its Opinion and Order of February 20, addressed the service of the original pleading that was memorialized in docket entry 11:

> Seytron Properties, LLC, was served with the original Complaint [ECF No. 11]. There is no evidence on the docket that it was served with subsequent versions of the Complaint, despite the Magistrate Judge's directive to effectuate service of the Third Amended Complaint. The certificate of service for the Fourth Amended Complaint indicates that service was accomplished through the Court's electronic filing system. However, none of the parties who received electronic notice were counsel of record for Seytron Properties, LLC.[1] It was not clear that Seytron Properties, LLC, had defaulted in connection with earlier complaints. (*See* Joint Mot. for Entry of Findings and J., ECF No. 55 (including Seytron Properties, LLC, as one of parties filing the joint stipulation).) Accordingly, the Plaintiffs were required to serve them with a copy of the Fourth Amended Complaint. *See* Fed. R. Civ. P. 5(a)(1)(B) (identifying "a pleading filed after the original complaint" as a paper that must be served on every party); Fed. R. Civ. P. 5(a)(2) (providing exception to service requirement for a party who is in default for failing to appear).

(2-20-13 Opinion & Order 13, ECF No 489.) The Court then advised that, due to "the uncertainty regarding service on Seytron Properties, LLC," it would "give the Plaintiffs an

---

[1] Attorney Schreiber received notice through CM/ECF. On the date of the filing of the Fourth Amended Complaint, August 1, 2007, Attorney Schreiber represented only Chad Seybold and Laura Seybold. (Notice of Appearance, ECF No. 43.)

3

opportunity to effectuate service of the Fourth Amended Complaint on Seytron Properties, LLC, or submit the required proof of service for the Fourth Amended Complaint." (*Id.* 13–14.) The Court advised the Plaintiffs that if service was not completed, proof of service provided, or good cause shown for the failure to effectuate service, the Court would dismiss Seytron Properties, LLC, without prejudice.

Instead of completing service of the Fourth Amended Complaint or providing good cause for the failure to effectuate service, the Plaintiffs now request the entry of default by citing to the same docket entry pertaining only to service of the original complaint, which the Court has already determined is insufficient to establish default. Accordingly, because this action has been pending against Seytron Properties, LLC, for more than one hundred twenty days with a failure to complete process, the Plaintiffs' request for entry of default is denied and the action against Seytron Properties, LLC, is dismissed without prejudice pursuant to Rule 4(m) of the Federal Rules of Civil Procedure.

**C.      Seytron, L.L.C.**

In paragraph 5 of the Plaintiffs' Request, they state that Seytron, L.L.C., a party that the Court previously identified as never being served with the pleading in this cause, "should be dismissed." The Court finds that the action against Seytron, L.L.C., is dismissed without prejudice pursuant to Rule 4(m) of the Federal Rules of Civil Procedure because this action has been pending for more than one hundred twenty days with a failure to complete process.

**D.     BPOE, LLC, Best Place on Earth, Seycad, LLC, Seycad Construction, LLC, Seytron Construction, LLC, Impact Financial, LLC, Impact Financial Group, LLC, and Gary L. Nunley**

The Plaintiffs request a hearing on damages with respect to defaulted parties so that default judgment may be entered against them. By way of background, they note the Clerk's Entry of Default against BPOE, LLC, Best Place on Earth, Seycad, LLC, Seycad Construction, LLC, Seytron Construction, LLC, Impact Financial, LLC, and Impact Financial Group, LLC, [ECF No. 303], and against Gary L. Nunley [ECF No. 491].

The Court, in consideration of whether to enter default judgment under Federal Rule of Civil Procedure 55(b)(2), must exercise discretion. *O'Brien v. R.J. O'Brien & Assocs., Inc.*, 998 F.2d 1394, 1398 (7th Cir. 1993) (citing *Merrill Lynch Mortg. Corp. v. Narayan*, 908 F.2d 246, 250 (7th Cir. 1990)). The Court's discretion is guided by a series of threshold considerations intended to assess the propriety of a default judgment. Factors to consider include: (1) the amount of money potentially involved; (2) whether material issues of fact or issues of substantial public importance are present; (3) whether the default is largely technical; (4) whether the plaintiff has been substantially prejudiced by the delay involved; (5) whether the grounds for default are clearly established or are in doubt; (6) the merits of the plaintiff's substantive claim; and (7) the sufficiency of the complaint. 10A C. Wright, A. Miller, M. Kane, R. Marcus & A. Steinman, Federal Practice and Procedure: Civil § 2685 (3d ed.); 3-25 J. Moore *et al.*, Moore's Manual—Federal Practice and Procedure § 25.102; *see also Cameron v. Myers*, 569 F. Supp. 2d 762, 764 (N.D. Ind. 2008).

The Court finds that there are issues surrounding several of the factors that impact the Court's discretion. First, the grounds for the entry of default are in doubt. Although summonses

were returned executed as to BPOE, LLC [ECF No. 7], Best Place on Earth [ECF No. 6],

Seycad, LLC [ECF No. 8], and Seytron Construction, LLC [ECF No. 9] with respect to the

original Complaint, these entities were not in default when the Plaintiffs filed their Amended

Complaint just a few days later on November 6, 2006. The Plaintiffs then filed a Second

Amended Complaint on November 16, 2006. Likewise, Nunley, who was served with the

original Complaint on November 1, 2006 [ECF No. 19], was not in default when the Plaintiffs

amended their pleadings.

Summons were returned executed for Impact Financial, LLC [ECF No. 46], Impact

Financial Group, LLC [ECF No. 48], and Seycad Construction, LLC [ECF No. 47] on December

7, 2006. The summonses for these entities were first issued on November 14, 2006, a date that is

after the date the Plaintiffs filed their Amended Complaint but before they filed the Second

Amended Complaint. The dates of the filing of the Amended Complaint and issuance of

summonses suggest that these summonses were issued and returned in connection with the

Amended Complaint.

What these dates establish is that the Defendants were not in default with respect to the

previous version of the pleading when the Plaintiffs filed amended pleadings. Because they were

not in default, the Plaintiffs were required to serve these Defendants with copies of the amended

pleadings. *See* Fed. R. Civ. P. 5(a)(1)(B) (identifying "a pleading filed after the original

complaint" as a paper that must be served on every party); Fed. R. Civ. P. 5(a)(2) (providing an

exception to the service requirement for a party who is in default for failing to appear). However,

there is no return service on file with respect to the Amended Complaint for Defendants BPOE,

LLC, Best Place on Earth, Seycad, LLC, Seytron Construction, LLC, or Nunley. There is no

return service on file with respect to these Defendants or with respect to Impact Financial, LLC, Impact Financial Group, LLC, or Seycad Construction, LLC, for the Second Amended Complaint, the Third Amended Complaint, or the Fourth Amended Complaint.

Instead of securing return service, the Plaintiffs provided an undated, unsworn, unverified document entitled "Verification of Service," signed by Attorney Jeffrey A. Schreiber and filed with the Court on March 25, 2008. The document indicates that Attorney Schreiber accepted service of the Fourth Amended Complaint on behalf of, *inter alia*, BPOE, LLC, Best Place on Earth, Seycad, LLC, Seycad Construction, LLC, Seytron Construction, LLC, Impact Financial, LLC, and Impact Financial Group, LLC. This document, however, does not qualify as a "signed return of service [that] constitutes prima facie evidence of valid service." *O'Brien*, 998 F.2d at 1298; *see also* Fed. R. Civ. P. 4(*l*) (requiring that proof of service be made to the court "by the server's affidavit"). Neither does the record establish that Attorney Schreiber was the agent authorized to accept service on behalf of these Defendants, or even the attorney representing them. In addition, the date that Attorney Schreiber affirms that he accepted service, August 3, 2008, is a date that was impossible to have received service, as it was a date in the future. Additionally, the document is not sworn or verified. All these factors are problematic because the burden of proving proper service is on the plaintiff. *Homer v. Jones-Bey*, 415 F.3d 748, 754 (7th Cir. 2005).

For the sake of completeness, the Court also notes that, although Attorney Schreiber received notice through CM/ECF when the Clerk entered default against BPOE, LLC, Best Place on Earth, Seycad, LLC, Seycad Construction, LLC, Seytron Construction, LLC, Impact Financial, LLC, and Impact Financial Group, LLC, on June 16, 2008, Attorney Schreiber had

withdrawn as counsel from the case by this date [ECF No. 281]. In addition, even before he withdrew his appearance, his appearance had been limited to Defendants Chad Seybold and Laura Seybold [ECF No. 43].[2] Thus, it is questionable whether the defaulted parties received any notice pertaining to the entry of default, and this lack of notice could certainly account for the Defendants' failure to address the default.[3] Importantly, these Defendants have not exhibited a willful refusal to litigate the case properly, as it has not been established that they were aware of the amended versions of the Complaint, including the Fourth Amended Complaint, or the entry of default.

Additionally, the Plaintiffs have not been substantially prejudiced by the delay. This litigation is six and one-half years old. The first time that the Plaintiffs endeavored to establish damages against BPOE, LLC, Best Place on Earth, Seycad, LLC, Seycad Construction, LLC, Seytron Construction, LLC, Impact Financial, LLC, Impact Financial Group, LLC, or Nunley was in the Request filed on March 19, 2013, when they requested that the Court hold a damages hearing, even though default had been entered against most of these Defendants since June 16, 2008 [ECF No. 303], nearly five years earlier. The request came only after the Court informed the Plaintiffs that claims against these parties remained outstanding such that the case could not be closed. Prior to this, the Plaintiffs believed that all claims had been resolved and that final judgment had properly been entered on August 30, 2011, when the Court ruled on a pending

---

[2] Although Attorney Schreiber's appearance on the docket of this case was limited to Chad and Laura Seybold, he may have believed that his representation extended to other entities. On March 6, 2008, Attorney Schreiber moved to withdraw as counsel for Seytron, LLC, and Seybold Montessori Academy [ECF Nos. 273, 274] on grounds that these entities had filed for bankruptcy, their cases had close, and they possessed no assets.

[3] The Court is aware that the rules of procedure do not require service on a party who is in default for failing to appear. *See* Fed. R. Civ. P. 5(a)(2).

motion for summary judgment. Based on representations the Plaintiffs made on appeal, the Court

of Appeals also understood the summary judgment ruling to have resolved all remaining claims.

*Rosenbaum v. White*, 692 F.3d 593, 595–96 (7th Cir. 2012); (Am. Br. and Required Short App.

of Pls.-Appellants 7, Case 11-3224, ECF No. 24 ("There are no claims and/or parties that remain

for disposition before the District Court in this Action. There are no parties to the litigation

appearing in an official capacity. There are no related appeals. The Court has jurisdiction over

this matter pursuant to 28 U.S.C. § 1291.").) It is difficult to conceive of prejudice where the

Plaintiffs themselves did not actively pursue damages and were satisfied with the posture of the

case as it relates to these Defendants.

Notably, this posture included a Joint Motion for Entry of Findings and Judgment [ECF

No. 55], which included, among other Defendants, BPOE, LLC, Best Place on Earth, Seycad,

LLC, Seycad Construction, LLC, Seytron Construction, LLC, Impact Financial, LLC, and

Impact Financial Group, LLC. As a result of this filing, the Court adopted the parties' stipulated

facts and ordered that these Defendants were permanently enjoined from destroying or removing

any records related to the Investment Properties, the Investment Plan, the Investments, or the

Defendants, or from denying the investors access to these records, and from transferring, selling,

encumbering, mortgaging or modifying any interests of any kind or nature in the Investment

Properties. (Order, ECF No. 60.) In addition, the Court ordered that the investment companies

where the Plaintiffs invested funds to purchase investment properties were entitled to ownership

and possession of the purchased properties and quieted title to those investment properties for the

benefit of the Plaintiffs. Thus, these Defendant had already been cooperative in acquiescing to

certain relief being sought by the Plaintiffs in this action. The method of pleading in the Fourth

Amended Complaint, which groups numerous Defendants together, makes it difficult to determine whether the Plaintiffs even intended to obtain additional recovery from these specific Defendants when they pursued this federal action.

Additional factors the Court considers when exercising its discretion to enter default judgment include the sufficiency of the pleadings, the merits of the Plaintiffs' substantive claims, and whether issues of substantial public importance are present. In consideration of these factors and the motion for default judgment, the Court acknowledges that the Seventh Circuit follows the rule that "the well-pleaded allegations of the complaint relating to liability are taken as true[.]" *Narayan*, 908 F.2d at 253 (quoting *United States v. Di Mucci*, 879 F.2d 1488, 1497 (7th Cir. 1989)); *see also Dundee Cement Co. v. Howard Pipe & Concrete Prods.*, 722 F.2d 1319, 1323 (7th Cir. 1983). However, pleadings that are "nothing more than conclusions" are not entitled to the assumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). This includes legal conclusions couched as factual allegations, *see Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 465 (7th Cir. 2010), as well as "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Moreover, the factual matter contained in a complaint does not state a claim that is plausible on its face unless the factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly,* 550 U.S. at 556).

Precedent supports the principle that default judgment is only appropriate if the well-pleaded allegations, along with any evidence submitted to the court, are sufficient to establish a legal claim. *Black v. Lane*, 22 F.3d 1395, 1399 (7th Cir. 1994) ("The entry of a

10

default order does not . . . preclude a party from challenging the sufficiency of the complaint."); *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992) ("[N]ecessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default."); *Wagstaff–EL v. Carlton Press Co.*, 913 F.2d 56, 57–58 (2d Cir. 1990) (default judgment properly vacated and summary judgment entered for the defendants where the plaintiff's claims were facially invalid or utterly unsupported); *Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388, 1392 (9th Cir. 1988) (defaulted party may contest legal sufficiency of allegations in complaint); *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981) (a district court has discretion once a default is entered "to require proof of necessary facts and need not agree that the alleged facts constitute a valid cause of action"); *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) ("[A] defendant's default does not in itself warrant the court in entering a default judgment. There must be a sufficient basis in the pleadings for the judgment entered."); *Days Inn Worldwide, Inc. v. Mayu & Roshan, LLC*, No. 06-cv-1581 (PGS), 2007 WL 1674485, at *4 (D.N.J. June 8, 2007) ("Default judgment is inappropriate, even where defendants have failed to appear, unless the plaintiff has provided well pleaded facts sufficient to establish a claim."); *Kleartex, Inc. v. Kleartex SDN BHD*, No. 91 CIV. 4739 (LAP), 1994 WL 733688, at *3 (S.D.N.Y. June 9, 1994); *Terio v. Great W. Bank*, 166 B.R. 213, 218 (S.D.N.Y. 1994) ("The conclusion that the complaint is subject to dismissal strongly militates against granting [the] Plaintiff's application for a default judgment."); *Weft, Inc. v. G.C. Inv. Assocs.*, 630 F. Supp. 1138, 1141 (E.D.N.C. 1986) (After default entry, court still bound to "consider whether plaintiff's allegations are sufficient to state a claim for relief."); *see also* Fed. R. Civ. P. 55(b)(2) (contemplating that a court may investigate any matter necessary, including

establishing the truth of any allegation by evidence, in order to aid its decision pertaining to default).

In the Fourth Amended Complaint, Seycad Construction, LLC, Seytron Construction, LLC, Impact Financial Group, LLC, and BPOE, LLC, are among the entities identified as Indiana limited liability companies, and collectively referred to as the "Organized Seybold Defendants." (4th Am. Compl. ¶ 17, ECF No. 168.) Two of these entities, Seycad Construction, LLC, and Seytron Construction, LLC, are also collectively referred to as the "Construction Entities." (4th Am. Compl. ¶ 26.) Best Place on Earth, Seycad, LLC, and Impact Financial, LLC, are among the entities identified as unorganized entities and are collectively referred to as the "Unorganized Seybold Defendants." (4th Am. Compl. ¶ 24.) The Construction Entities, the Organized Seybold Entities, and the Unorganized Seybold Entities, along with a Montessori academy primarily owned by the Seybolds, are collectively referred to as the "Seybold Entities." (4th Am. Compl. ¶ 27.) The Seybold Entities, together with Scott Waterman, Chad and Laura Seybold, and John Verrerro, are collectively identified as the "Co-Conspirators." (4th Am. Compl. ¶ 28.) No less than fourteen entities and individuals make up the category of Co-Conspirators.

The Plaintiffs allege that the Investment Scheme promoted and run by Chad was, in effect, a Ponzi scheme, and that he made various representations to induce the Plaintiffs to invest and then failed to act and perform as he promised. The Plaintiffs also allege that "[a] significant portion of the Investments have been commingled with the Seytron Entities, other entities, commingled to other investment groups, utilized for other unrelated business opportunities, commingled with other investment properties, commingled with the personal accounts of Chad

and/or Verrerro, used for the personal benefit of Chad and Verrerro, and used, without authorization or consent, for purposes wholly unrelated to the Investment Scheme." (4th Am. Compl. ¶ 54.) According to the Fourth Amended Complaint, the Construction Entities, who provided the rehabilitative, construction, and maintenance services for the investment properties, "delivered significantly inflated billings for work allegedly performed in a fraudulent effort to siphon away money from the Investments and the Plaintiffs for the personal benefit of Chad and Verrerro." (4th Am. Compl. ¶ 52.)

With respect to Nunley, the allegations in the Fourth Amended Complaint are that Chad conspired with Nunley and Appraisal Resource Group (ARG) to "deliver inflated appraisals for several of the Investment Properties for purposes of obtaining financing above and beyond the fair market value of the Investment Properties in order to obtain additional funds to use for their own personal benefit or for other fraudulent and improper purposes." (4th Am. Compl. ¶ 59.) The inflated appraisals caused the investment properties to be overleveraged to the detriment of the Plaintiffs. (4th Am. Compl. ¶ 61.)

1.    RICO Claims

Parsing the nineteen-count Fourth Amended Complaint, the Court concludes that several claims can reasonably be construed as being directed at BPOE, LLC, Best Place on Earth, Seycad, LLC, Seycad Construction, LLC, Seytron Construction, LLC, Impact Financial, LLC, and Impact Financial Group, LLC (among other Defendants) by virtue of these entities' inclusion in the definition of Co-Conspirators. For example, in Count V, the Federal RICO

13

Violations, 18 U.S.C. § 1961, *et seq.*, the Plaintiffs allege wrongdoing by the Seybold Entities,

Chad, and the Co-Conspirators.

The Racketeer Influenced and Corrupt Organizations (RICO) statute makes it unlawful

for "any person employed by or associated with [an] enterprise . . . to conduct or participate,

directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering

activity or collection of unlawful debt." 18 U.S.C. § 1962(c). "[T]o state a viable cause of action

under § 1962(c), a plaintiff must allege (1) conduct (2) of an enterprise (3) through a pattern (4)

of racketeering activity." *Slaney v. The Int'l Amateur Athletic Fed'n*, 244 F.3d 580, 597 (7th Cir.

2001) (citing *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)). A pattern of racketeering

activity consists of at least two predicate acts of racketeering committed within a ten-year period.

Predicate acts are acts indictable under a specified list of criminal laws, including mail fraud

under 18 U.S.C. § 1341, and wire fraud under 18 U.S.C. § 1343. *Midwest Grinding Co. v. Spitz*,

976 F.2d 1016, 1019 (7th Cir. 1992).

The Seventh Circuit has declared that "[a] RICO complaint must identify the enterprise."

*Richmond v. Nationwide Cassel, L.P.*, 52 F.3d 640, 645 (7th Cir. 1995). "While a RICO

enterprise can be formal or informal, some type of organizational structure is required." *Stachon*

*v. United Consumers Club, Inc.*, 229 F.3d 673, 675 (7th Cir.2000); *see also Richmond*, 52 F.3d at

645 ("The hallmark of an enterprise is a structure." (quotation marks omitted)). More

specifically, a RICO enterprise must have "an ongoing structure of persons associated through

time, joined in purpose, and organized in a manner amenable to hierarchical or consensual

decision making," with "goals separate from the predicate acts themselves." *Stachon*, 229 F.3d at

675 (quotation marks omitted).

14

"[T]o have conducted or participated in the enterprise's affairs under § 1962(c), the person charged must have had some part in directing those affairs." *Slaney*, 244 F.3d at 598. "'In other words, she must have participated in the operation or the management of the enterprise itself, and she must have asserted some control over the enterprise.'" *Id.* (quoting *United States v. Swan*, 224 F.3d 632, 635 (7th Cir. 2000)).

In addition, plaintiffs "must, at a minimum, describe the . . . predicate acts of fraud with some specificity and state the time, place, and content of the alleged false representations, the method by which the misrepresentations were communicated, and the identities of the parties to those misrepresentations." *Slaney*, 244 F.3d at 597 (noting that allegations of fraud in a civil RICO complaint are subject to the heightened pleading standard of Federal Rule of Civil Procedure 9(b)); *see also Midwest Grinding*, 976 F.2d at 1020 (stating that, "at minimum," a RICO plaintiff must "describe the predicate acts with some specificity and 'state the time, place, and content of the alleged communications perpetrating the fraud.'" (quoting *Grau Mill Dev. Corp. v. Colonial Bank & Trust Co.*, 927 F.2d 988, 992 (7th Cir. 1991)). In a multiple defendant case, Rule 9(b) required a RICO plaintiff to plead sufficient facts to notify each defendant of his alleged participation in the scheme. *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 726 (7th Cir. 1998)).

The Plaintiffs allege that "Chad and the Co-Conspirators control or are associated with the Seybold Entities, the Investments, and the Investment Scheme," and that "Chad and one or more of the Co-Conspirators routinely participate as top level management in the affairs of the Seybold Entities, the Investment Scheme, and in handling investments." (4th Am. Compl. ¶¶ 134, 135.) They allege that Chad and the Co-Conspirators, "through Chad[]" engaged in phone

15

and mail communications and made fraudulent representations that constitute mail fraud, wire

fraud, bank fraud, and violations of the Land Sales Full Disclosure Act. (4th Am. Compl.

¶¶ 142–47.)

There are no factual allegations in the Fourth Amended Complaint that plausibly suggest

that BPOE, LLC, Best Place on Earth, Seycad, LLC, Seycad Construction, LLC, Seytron

Construction, LLC, Impact Financial, LLC, and Impact Financial Group, LLC, participated in

the operation or management of a RICO enterprise. The Plaintiffs allege that the Co-

Conspirators "routinely participate as top level management in the affairs of" the Investment

Scheme, but make no attempt to identify whether any one Defendant, including BPOE, LLC,

Best Place on Earth, Seycad, LLC, Seycad Construction, LLC, Seytron Construction, LLC,

Impact Financial, LLC, or Impact Financial Group, LLC, participated. Moreover, it is unclear

what the Plaintiffs intended to identify as the requisite enterprise, referring to Chad's and the Co-

Conspirators' participation in the Seybold Entities and the Investment Scheme. However, the

Plaintiffs' definition of Seybold Entities includes all of the same parties that the Fourth Amended

Complaint identifies as Co-Conspirators. A RICO plaintiff must allege and prove the existence

of two distinct entities: "(1) a 'person'; and (2) an 'enterprise' that is not simply the same

'person' referred to by a different name." *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S.

158, 161 (2001); 18 U.S.C. § 1962(c) (referring to "person[s]" who are "employed by or

associated with" the "enterprise"); *see also Jay E. Hayden Found. v. First Neighborhood Bank,

N.A.*, 610 F.3d 382, 389 (7th Cir. 2010) (noting that "the RICO offense is *using* an enterprise to

engage in a pattern of racketeering activity"). With respect to the defaulted Defendants, the

Fourth Amended Complaint makes no distinction between the entities that were the persons

16

allegedly violating RICO, and which entities were a part of the enterprise being used as a tool to violate RICO.

Additionally, the hallmark of an enterprise is a structure, *Richmond*, 52 F.3d at 645, and without a clear indication of which Defendants made up the enterprise, the Plaintiffs fail to plead any facts identifying the "structure and goals" of the enterprise that are separate from the alleged predicate acts. The requirement that RICO only applies to ongoing organizations with "structure and goals separate from the predicate acts themselves" is intended to limit the reach of RICO. *See Stachon*, 229 F.3d at 675–76 (finding that a liberal construction of the allegations established, at most, "a pattern of racketeering activity through the purported scheme to defraud consumers," and that more was required to commit a RICO violation). Absent this limitation, every garden-variety conspiracy or fraud claim would be a RICO claim. *Bachman v. Bear, Stearns & Co.*, 178 F.3d 930, 932 (7th Cir. 1999); *Fitzgerald v. Chrysler Corp.*, 116 F.3d 225, 228 (7th Cir. 1997). The Plaintiffs' Fourth Amended Complaint does not identify an enterprise with structures and goals that were separate from the alleged predicate acts of fraud.

Moreover, the Fourth Amended Complaint does not identify any predicate actions taken by BPOE, LLC, Best Place on Earth, Seycad, LLC, Seycad Construction, LLC, Seytron Construction, LLC, Impact Financial, LLC, and Impact Financial Group, LLC, all these parties having been grouped together with numerous others and identified as Co-Conspirators. *See, e.g., Sears v. Likens*, 912 F.2d 889, 893 (7th Cir. 1990) (dismissing RICO claim for "lump[ing] all the defendants together" and failing to "specify who was involved in what activity"); *see also Vicom, Inc. v. Harbridge Merchant Servs., Inc.*, 20 F.3d 771, 778 (7th Cir. 1994). The Fourth Amended Complaint thus fails to inform each of the Defendants of its alleged participation in the

17

pattern of racketeering. In fact, the specific factual allegations of the Fourth Amended Complaint suggest that the predicate acts were committed by Chad, and that he was responsible for the operation, management, and control of any enterprise.

Pleading requirements are to be strictly enforced when default judgment is sought under RICO. *Alan Neuman Prods.*, 862 F.2d at 1393. Count V of the Fourth Amended Complaint does not state a RICO claim against BPOE, LLC, Best Place on Earth, Seycad, LLC, Seycad Construction, LLC, Seytron Construction, LLC, Impact Financial, LLC, or Impact Financial Group, LLC. The insufficiency of the Fourth Amended Complaint to establish liability for a RICO violation, particularly when combined with the fact that the grounds for default and the prejudice to the Plaintiffs are both in doubt, warrants against proceeding further on this claim.

For the same reasons just outlined above, the Court declines to grant default judgment to the Plaintiffs with respect to the Indiana RICO claims set forth in Count VIII of the Fourth Amended Complaint. Those claims, like the federal RICO claims, lack detail that would plausibly suggest that BPOE, LLC, Best Place on Earth, Seycad, LLC, Seycad Construction, LLC, Seytron Construction, LLC, Impact Financial, LLC, or Impact Financial Group, LLC, participated in the activities of an enterprise that engaged in a pattern of racketeering activity. Ind. Code § 35-45-6-2; *Jennings v. Auto Meter Prods., Inc.*, 495 F.3d 466, 476 (7th Cir. 2007) (because Indiana's RICO statute was modeled after federal RICO, dismissing Indiana RICO claim due to failure of federal RICO claim).[4]

---

[4] The Court recognizes that Indiana's statute is broader than the federal RICO statute in that it imposes liability not just on a person who conducts or participates in the activities of the racketeering enterprise, but also on a person who otherwise participates in the activities of the enterprise, i.e., the foot soldiers as well as the generals. *See Keesling v. Beegle*, 880 N.E.2d 1202, 1206 (Ind. 2008). The broader scope of Indiana's statute does not change the outcome in this case.

18

2.      Fraud Under Indiana Law

In Count VII of the Fourth Amended Complaint, the Plaintiffs allege that Chad and the Co-Conspirators perpetrated a fraudulent scheme against the Plaintiffs, which constituted common law fraud and fraud as defined by Indiana Code § 35-43-5-3. This section of the Indiana Code, referred to as deception, is a criminal statute. However, a person may bring a civil action against the person who caused the loss under Indiana's Crime Victim's Relief Act. *See* Ind. Code § 34-24-3-1 (specifically referencing "a violation of IC 35-43").

The Plaintiffs allege that Chad and the Co-Conspirators promoted a fraudulent scheme. The bulk of the specific factual allegations regarding the promotion, deception, and fraud specifically reference actions taken by Chad, not the Co-Conspirators. The Fourth Amended Complaint is completely devoid of factual allegations that identify the specific involvement of BPOE, LLC, Best Place on Earth, Seycad, LLC, Impact Financial, LLC, or Impact Financial Group, LLC, as it relates to the promotion of the investment scheme. The Fourth Amended Complaint does specifically set out the actions of Seycad Construction, LLC, and Seytron Construction, LLC, alleging that they delivered inflated billing for their work in a fraudulent effort to siphon money away from the investments and for the personal benefit of Chad and Verrerro. This allegation, however, does not satisfy the federal pleading requirement that an allegation of fraud "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). The circumstances of fraud "include the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*, 536 F.3d 663, 668 (7th Cir. 2008) (quotation marks

omitted). This requirement has been summarized as calling for the first paragraph of any newspaper story: "the who, what, when, where, and how." *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990). The Plaintiffs allege that the Construction Entities— Seycad Construction, LLC, and Seytron Construction, LLC—delivered inflated billing, but they do not state when these billings were made or how they were communicated to any of the Plaintiffs, if at all. In fact, is not clear that any of the Plaintiffs relied on the misrepresentations regarding billing. *See Loomis v. Ameritech Corp.*, 764 N.E.2d 658, 667 (Ind. Ct. App. 2002) (identifying reliance by the complaining party as an essential element of fraud).

Even if the Fourth Amended Complaint provided the requisite specificity, there is no reason to proceed further on this defaulted claim where proper service of the amended pleadings has not been established and the Plaintiffs have not been prejudiced by the delay.

3.    Violations of Michigan Law

In Counts IX, X, and XI, the Plaintiffs allege violations of Michigan statutes. Among the Defendants they name are Chad, Laura, Verrerro, the Seybold Entities, and the Co-Conspirators. In Count IX, the Plaintiffs allege that Chad and the Co-Conspirators committed larceny by conversion as defined by Mich. Comp. Laws § 750.362 when they exerting unauthorized control over the investments and the investment properties to deprive the Plaintiffs of the use and value of the same. The statute cited by the Plaintiffs is a criminal statute, with no corresponding civil remedy. Even if the Court assumed an available remedy, the allegations of the Fourth Amended Complaint fail to distinguish the actions of BPOE, LLC, Best Place on Earth, Seycad, LLC, Seycad Construction, LLC, Seytron Construction, LLC, Impact Financial, LLC, or Impact

Financial Group, LLC, from any of the other numerous Defendants that the pleading identifies as Co-Conspirators.

In Count X, characterized as a claim under Michigan law for fraud by false pretenses, the Plaintiffs use the same language to group all of the Co-Conspirators together without any means to determine which of the named entities engaged in the deceit being alleged. Moreover, the statute the Plaintiffs cite, Mich. Comp. Laws § 750.271, refers to the fraudulent issue and sale of securities. There are no allegations in the Fourth Amended Complaint upon which it can be determined that BPOE, LLC, Best Place on Earth, Seycad, LLC, Seycad Construction, LLC, Seytron Construction, LLC, Impact Financial, LLC, or Impact Financial Group, LLC, engaged in the criminal activity described in the statute: "fraudulently issu[ing] or caus[ing] to be issued, any stock, scrip, or evidence of debt, of any bank, insurance, mining or other incorporated company of this state, or . . . sell[ing] or offer[ing] for sale, hypothecat[ing], or otherwise dispos[ing] of any such stock, scrip or other evidence of debt, knowing the same to be so fraudulently issued." Mich. Comp. Laws § 750.271. If the statute the Plaintiffs intended to cite was Michigan Compiled Laws 750.218, which makes it a crime to engage in certain activity considered to be the use of false pretenses with intent to defraud, the allegations nevertheless fail to establish liability. The statute is, again, a criminal statute, not a civil cause of action, and the Fourth Amended Complaint does not sufficiently parse the actions of the various Defendants.

The final count of the Fourth Amended Complaint that names the Co-Conspirators, and thus includes BPOE, LLC, Best Place on Earth, Seycad, LLC, Seycad Construction, LLC, Seytron Construction, LLC, Impact Financial, LLC, and Impact Financial Group, LLC, because they are included in the definition of Co-Conspirators, is a claim for violations of Michigan's

RICO statute. The Plaintiffs allege that Chad and the Co-Conspirators have committed larceny by conversion, false pretenses, securities fraud, and embezzlement and, through this pattern of activity, have used and invested those proceeds to acquire interest in property and to establish and operate a series of enterprises, including the Seybold Entities; have acquired and maintained an interest in or control of property and various enterprises, including the Seybold Entities; and have conducted the activities of the Seybold Entities through a pattern of racketeering. BPOE, LLC, Best Place on Earth, Seycad, LLC, Seycad Construction, LLC, Seytron Construction, LLC, Impact Financial, LLC, and Impact Financial Group, LLC, are all defined in the Fourth Amended Complaint as Seybold Entities. They are also all defined as Co-Conspirators. Thus, the Fourth Amended Complaint makes no distinction between the "person" who was "employed by, or associated with, an enterprise," Mich. Comp. Laws § 750.159i(1), or who "knowingly acquire[d] or maintain[ed] an interest in or control of an enterprise," Mich. Comp. Laws § 750.159i(2), and the enterprise itself. Moreover, it is unclear what legal authority the Plaintiffs attempt to invoke to pursue civil remedies for a violation of the Michigan criminal statute. The Fourth Amended Complaint seeks judgment "against Chad and the Co-Conspirators for damage proximately caused by said racketeering activity and for treble damages, attorney's fees, and other costs under the Indiana Civil Remedies for Racketeering activities Act pursuant to MPC 750.159g." (4th Am. Compl. ¶ 192.) "MPC 750.159g" is presumably a reference to Michigan Compiled Laws § 750.159g, which simply defines racketeering for purposes of the criminal statute. Indiana has a Victims Relief Act, Indiana Code § 34-24-3-1 which allows a plaintiff to recover losses for a violation of the specific code sections enumerated in the Act. A violation of

a Michigan law, however, does not suffice to establish liability under Indiana's Crime Victim's Relief Act.

In consideration of the pleadings, the doubtful grounds for default, and lack of substantial prejudice to the Plaintiffs, the Court declines to proceed to a damages hearing on this claim.

4.      Claims Against Nunley

With regard to Nunley, the Plaintiffs allege that his actions as an appraiser caused damages. Specifically, they allege that Nunley conspired with Chad to deliver inflated appraisals for several of the investment properties for purposes of obtaining financing above the fair market value of those properties, which led to additional funds being generated for the personal benefit of Chad and Nunley. They allege that these inflated appraisals also caused the properties to be overleveraged to the detriment of the Plaintiffs.

The legal cause of action arising out of Nunley's alleged actions that the Plaintiffs identify in their Fourth Amended Complaint is "Appraiser Liability." (Fourth Am. Compl., Count XV.) In a separate count labeled "Civil Conspiracy," the Plaintiffs allege that, "[t]o the extent Nunley, ARP, Seytron Counsel, jointly or separately, by concerted action, worked with Chad to perpetuate the Fraudulent Scheme, said party is liable to Plaintiffs for civil conspiracy to the extent of injury and damages to Plaintiffs resulting from the unlawful conduct and representations of Chad." (Fourth Am. Compl. ¶ 211.)

The allegations against Nunley are that he conspired with Chad to fraudulently inflate the appraisal value of certain investment property. In Indiana, there is no civil cause of action for conspiracy, but there is a civil cause of action for damages resulting from conspiracy. *Sims v.*

23

*Beamer*, 757 N.E.2d 1021, 1026 (Ind. Ct. App. 2001); *Huntington Mortg. Co. v. DeBrota*, 703 N.E.2d 160, 168 (Ind. Ct. App. 1998). "Civil conspiracy is defined as a combination of two or more persons, by concerted action, to accomplish an unlawful purpose or to accomplish some purpose, not in itself unlawful, by unlawful means." *Huntington Mortg.*, 703 N.E.2d at 168; *see also K.M.K. v. A.K.*, 908 N.E.2d 658, 663 (Ind. Ct. App. 2009). Allegations of civil conspiracy "are just another way of asserting a concerted action in the commission of a tort." *K.M.K.*, 908 N.E.2d at 664; *Allen v. Great Am. Reserve Ins. Co.*, 766 N.E.2d 1157, 1168 (Ind. 2002) ("Unlike criminal conspiracy, '[t]he gist of a civil conspiracy is not the unlawful agreement, but the damage resulting from that agreement.'" (quoting 16 Am. Jur. 2d, Conspiracy, § 53 at 279 (1998)). Therefore, the Plaintiffs must allege the commission of a tort.

The tort the Plaintiffs allege is fraud. The Court declines to exercise its discretion to conduct a damages hearing. The Plaintiffs have made no allegation that they, as opposed to the lending institutions that provided financing, relied on the appraisals at issue. There is no suggestion that the appraisals were provided to any of the Plaintiffs, or affected their decisions to invest with Chad. Moreover, as discussed earlier, Nunley was not in default when the Plaintiffs amended their pleadings. Yet, the Plaintiffs did not serve him with the Amended Complaint, Second Amended Complaint, Third Amended Complaint, or Fourth Amended Complaint.

5.     Setting Aside Default

The Federal Rules of Civil Procedure contemplate that a defendant may move to set aside a clerk's entry of default. Rule 55(c) allows a court to set aside an entry of default for good cause. Fed. R. Civ. P. 55(c). The Seventh Circuit has held that a district court may act sua sponte

in setting aside an entry of default under Rule 55(c). *Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 386 (7th Cir. 2008). The Seventh Circuit has also ruled that Rule 55(c)'s "good cause" standard is "easier to satisfy" than Rule 60(b)'s mistake, inadvertence, and excusable neglect standard. *Sims v. EGA Prods., Inc.*, 475 F.3d 865, 868 (7th Cir. 2007).

Normally, when a defendant has moved to set aside a default, it must demonstrate: "(1) good cause for default (2) quick action to correct it and (3) meritorious defense to plaintiff's complaint." *Pretzel & Stouffer v. Imperial Adjusters*, 28 F.3d 42, 45 (7th Cir. 1994). Here, the very reason that the entries of default were entered demonstrates good cause and shows why the Defendants could not have acted quickly to correct an erroneous default. "Before a default can be entered, the court must have jurisdiction over the party against whom the judgment is sought, which also means that the party must have been effectively served with process." 10A Fed. Prac. & Proc. Civ. § 2682 Entry of Default Under Rule 55(a) (3d ed.) (footnote omitted); *see also Fisher v. Lynch*, 531 F. Supp. 2d 1253, 1269 n.12 (D. Kan. 2008) ("Because a party has no duty to plead until properly served, sufficient service of process is a prerequisite to entry of default."). Where service is improper, good cause exists to set aside a default. *See, e.g., Hides v. City of Fort Wayne*, No. 1:06-CV-328, 2006 WL 3833357, at *2 (N.D. Ind. Dec. 18, 2006) (holding entry of default improper because service on it was insufficient as a matter of law); *Guess?, Inc., v. Chang,* 163 F.R.D. 505, 508 (N.D. Ill. 1995) (articulating that insufficient service is good cause to set aside a default judgment); *Dahl v. Kanawha Inv. Holding Co.*, 161 F.R.D. 673, 684 (N.D. Iowa 1995) (denying entry of default or default judgment). It is worthy of note that the record does not establish that the Defendants' culpable conduct led to the default. Moreover,

given the insufficiencies in the Fourth Amended Complaint, the Defendants would have had a meritorious defense in the form of a motion to dismiss.

6.      Opportunity to Amend

        The operative pleading before the Court fails to state any valid claims for relief against the remaining Defendants. The Court thus finds that dismissal of the action, six and one-half years after it began, is appropriate. When courts dismiss a pleading, they typically do not dismiss the entire action, but provide the plaintiff at least one opportunity to amend the complaint. *Foster v. DeLuca*, 545 F.3d 582, 584 (7th Cir. 2008). Here, even if the Plaintiffs desired to continue to pursue this litigation through a Fifth Amended Complaint, the Court would deny any such attempt. Leave to amend a complaint should be given "freely . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). However, "considerations of delay and prejudice may preclude automatic grant of an amendment." *Bohen v. City of East Chi., Ind.*, 799 F.2d 1180, 1184 (7th Cir. 1986). Leave to amend a complaint is appropriately denied where there is undue delay, bad faith, dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of the amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1962). The Plaintiffs cannot overcome the harm to judicial economy and the undue prejudice to the opposing parties that would result from granting an amendment at this late stage of the litigation. The events giving rise to the litigation occurred more than eight years ago. Even after four rounds of pleading, each of the remaining Defendants' involvement in the events have been lumped with other Defendants and, in some cases, the legal basis for the claims are unclear. The

26

current version of the pleading, the Fourth Amended Complaint, was filed as a result of the

Court granting a Motion for More Definite Statement filed by some of the Defendants. In

granting the relief and ordering that a Fourth Amended Complaint be filed, Magistrate Judge

Roger Cosbey reasoned:

> [T]he Plaintiffs have indeed failed to plead their claims based on fraud with
> sufficient particularity to satisfy Rule 9(b), resulting in a pleading that is vague and
> ambiguous. For example, the Plaintiffs for the most part simply lump all of the
> Defendants together throughout the Third Amended Complaint, referring to them as
> "Co-Conspirators," never specifying what misrepresentation each Defendant
> purportedly made. (See, e.g., Third Am. Compl. ¶¶ 28, 52, 54.)

4, ECF No. 147.) The Court also noted that the Plaintiffs failed to specify the dates that any

alleged misrepresentations occurred, and that it was impossible to determine from the Third

Amended Complaint which Defendants were being sued under which claims. Despite these

deficiencies having been noted by the Court with respect to claims against the moving

Defendants, the Plaintiffs did not take the opportunity when they filed the Fourth Amended

Complaint to provide the requisite detail for the claims against other Defendants, including those

parties that are the subject of this Opinion. Given the substantial passage of time, it is highly

unlikely that any amendment would present facts to support a proper theory of liability or

demonstrate substantial merit, or that the Defendants could reasonably be expected to defend

against such belated charges. Even as the Plaintiffs actively pursued claims against certain

Defendants and defended a motion for summary judgment, they noted in their briefing that

"[c]laims for violation of State and Federal RICO are hereby waived." (Pls.' Amended Resp. in

Opposition and Pls.' Amended Countermotion for Summary Judgment 49 n.8, ECF Nos. 433 &

434.) The Plaintiffs did not explain the reason behind the "waiver," but it is reasonable to assume

that the Plaintiffs had not garnered any evidence in support of the claims. The Plaintiffs did not

diligently pursue the litigation against these Defendants, satisfied that the litigation was over when the Court granted summary judgment to three of the Defendants nearly two years ago in August 2011. For these reasons, the Court will not grant the Plaintiffs any additional opportunities to amend their pleading, and will dismiss the claims with prejudice.

**CONCLUSION**

For the reasons stated above, the Court DENIES the Plaintiffs' Request for Entry of Default Judgment as to the Pending Default Entries [ECF No. 501]. The Court DISMISSES WITHOUT PREJUDICE See What, LLC, Seytron Properties, LLC, and Seytron, L.L.C. Additionally, the Court SETS ASIDE the entries of default against BPOE, LLC, Best Place on Earth, Seycad, LLC, Seycad Construction, LLC, Seytron Construction, LLC, Impact Financial, LLC, and Impact Financial Group, LLC, [ECF No. 303], and against Gary L. Nunley [ECF No. 491], and DISMISSES all remaining claims. Because there are no remaining claims or parties, the Clerk is directed to enter judgment dismissing this action in its entirety and closing the case.

SO ORDERED on May 23, 2013.

 s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT